UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,         Case No. 19-20216-9
                                       HON. VICTORIA A. ROBERTS

v.

JEROME BRAY- D9,

          Defendant.
_____/

## **ORDER GRANTING DEFENDANT'S MOTION FOR BOND [ECF No. 145]**

### I. INTRODUCTION

Jerome Bray ("Bray") filed a Motion for Bond. He consented to detention on July 12, 2019.

At a hearing on April 1, 2020, Bray requested release to state custody for a parole violation. The Government concurred, but it also requested that the Court issue a federal detainer that would allow the FBI to take Bray into custody if the State of Michigan released him for any reason. The Court agreed to give him bond with the condition that he be taken into custody by the state. That allayed any fears the Court had about his dangerousness. A full-blown bond hearing was not held.

1

The State declined to take Bray into custody. This motion followed. The Court heard oral arguments on May 11, 2020. Bray was present and consented to participation in the hearing via videoconference.

Because the Government does not prove by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of the community, the Court **GRANTS** Bray's Motion for Bond.

## II.   FACTUAL BACKGROUND

The Government charged Bray in a multi-defendant Superseding Indictment with Conspiracy to Possess with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. § 846, 841. The Government alleges that from approximately March 2016 through August 2017, Bray and his co-defendants ran a large-scale drug operation and conspired to possess firearms in furtherance of this drug trafficking scheme.

## III.   STANDARD OF REVIEW

It is the default position that the court release a defendant awaiting trial. *United States v. Stone,* 608 F.3d 939, 945 (6th Cir. 2010). However, this position is modified "for certain, particularly dangerous defendants." *Id.* When there is probable cause that a defendant committed a crime of violence or a drug trafficking offense, there is a rebuttable presumption in

favor of detention. *Id*. Because of the nature of Bray's charges, the rebuttable presumption applies. *See* 18 U.S.C. § 3142(e).

This presumption in favor of detention imposes a burden on Bray to produce evidence that he does not pose a danger to the community or a risk of flight. *Stone,* 608 F.3d at 945; *see also United States v. Mercedes,* 254 F.3d 433, 436 (2d Cir. 2001). This is not a heavy burden, but Bray must produce "at least some evidence." *Id.* (citing *United States v. Stricklin,* 932 F.2d 1353, 1355 (10th Cir. 1991)).

Even if Bray satisfies his burden of production, the presumption remains a factor the Court must consider in addition to the factors set forth in § 3142(g): (1) the nature and circumstances of the offense; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *Mercedes,* 254 F.3d at 436; 18 U.S.C. § 3142(g).

The presumption remains a factor because of Congress's judgment that some defendants should continue to be detained before a finding of guilt because of a likelihood they will continue to engage in criminal conduct despite attempts to impose bond conditions designed to deter criminal

conduct. *Stone,* 608 F.3d at 945; *see also United States v. Dominguez,* 783 F.2d 702, 707 (7th Cir. 1986).

Ultimately, it is the Government's burden to prove by a preponderance of the evidence that there is no condition or combination of conditions that will reasonably assure the appearance of the defendant as required and by clear and convincing evidence that there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community. *Id.*; 18 U.S.C. § 3142(e).

## IV. ANALYSIS

The Court must first consider whether Bray satisfies his burden to produce evidence to rebut the presumption that no condition or combination of conditions of release would reasonably assure (i) his appearance and (ii) the safety of the community. 18 U.S.C. § 3142(e)(3).

Pretrial Services believes there are conditions that could be set to reasonably assure Bray's appearance. It also believes conditions can be set to minimize Bray's risk of danger.

### A. Bray Satisfies His Burden of Production

Bray's burden of production is "relatively light." *Stone,* 608 F.3d 939 at 947; *see also United States v. Mercedes,* 254 F.3d 433, 436 (2d Cir. 2001).

Bray must offer at least some evidence that he does not pose a danger to the community or risk of flight. *Stone*, 608 F.3d at 945.

To satisfy his burden, Bray cites to his close ties within Wayne County, Michigan and says a friend, who has no prior criminal record and lives alone with no weapons in her home, is available to serve as a third-party custodian. Bray says he would be isolated in the home and would comply with any conditions set by the Court. Bray acknowledges that these allegations are that he engaged in criminal conduct shortly after his release on parole. However, there are no allegations of additional criminal conduct between August 2017 and Bray's self-surrender in July 2019.

The Government says Bray fails to rebut the presumption because he does not meaningfully address his role in this case or his criminal history. It says Bray does not appear to be deterred because his offense here occurred while on parole for past drug offenses. As a result, it says his argument is insufficient to show why his situation falls outside of the "congressional paradigm" that defendants charged with certain offenses should be detained. *Stone,* 608 F.3d at 946 ("To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm'").

5

Bray's burden of production is slight, and the Court finds he satisfies it. *See Stone,* 608 F.3d at 947 (finding that while the defendants' evidence focused mainly on their potential risk of flight rather than a potential danger to the community, the evidence put forward was sufficient because the burden is relatively light). The burden now shifts to the Government to prove there are no conditions or combination of conditions to assure the safety of the community if Bray is released. To satisfy that burden, the Government relies on the four factors in 18 U.S.C. § 3142(g).

### a. Section 3142(g) Factors Weigh in Favor of Release

The Court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence of dangerousness; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger posed by the person's release. 18 U.S.C. § 3142(g).

### 1. Nature and Circumstances of the Offense

Bray is one of several defendants named in a conspiracy to possess with intent to distribute a controlled substance. He allegedly committed this offense while on parole.

The inquiry includes considering "whether the offense is a crime of violence." 18 U.S.C. § 3142(g)(1). Conspiracy to possess with intent to

6

distribute a controlled substance is not a crime of violence. Under 18 U.S.C. § 3156(a)(4)(C), the term "crime of violence," as used in Section 3143, includes "any felony under chapter 109A, 110, or 117." Although Bray's offense is not a crime of violence, the Sixth Circuit stated, "[t]o be sure, drug trafficking is a serious offense that, in itself is a danger to the community… But drug dealers do not necessarily pose the immediate risk of serious violence that the defendants here do." *Stone,* 608 F.3d at 955 n.4.

The Court finds the nature and circumstances of Bray's offense do not indicate that he poses a risk of flight, or a danger to the community.

### 2. Weight of the Evidence of Dangerousness

The Court considers the weight of the evidence of dangerousness, not the weight of the evidence of guilt. *Stone,* 608 F.3d at 948 (citing *United States v. Hazime,* 762 F.2d 34, 37 (6th Cir. 1985)). Bray says the Court must make an individualized inquiry into his dangerousness, not based upon guilt by association because of his co-defendants. The Court acknowledges its responsibility to individually assess Bray.

The government says Bray's criminal history and his parolee status establish that he is a danger to the community and that he will likely return to drug trafficking if released.

The Pretrial Services Report describes Bray's criminal history. His most significant prior offense was in 1997 for drug charges; he received a life sentence. He was paroled in March 2016 and his alleged conduct in this case took place from February – August 2017. There are no allegations of criminal behavior by Bray in the almost two-year period between that time and his self surrender on July 11, 2019.

The Court considers whether Bray would be a danger if conditions recommended by Pretrial Services are imposed and abided by. The Court must balance Bray's past history against COVID-19 risks and his health; that he has no history of violence, alcohol or substance abuse; and that Pretrial Services recommends release.

### 3. History and Characteristics and Nature and Seriousness of Danger Posed by Release

The history and characteristics" of a person encompass numerous qualities including the defendant's character, physical and mental condition, family ties, community ties, past conduct, history of drug or alcohol abuse, and criminal history. 18 U.S.C. § 3142(g)(3). These considerations also include whether the person was on probation or parole at the time of the current offense. *Id.*

Bray is 48 years old. He has strong community ties and no history of mental conditions, drug of alcohol abuse, or physical limitations. But, the government says neither Bray's ties to the community nor conditions of release can rebut a concern that he poses a danger to the community.

The Bail Reform Act incorporates a defendant's physical condition into "history and characteristics." As such, the Court considers Bray potential vulnerability to COVID-19. The Pretrial Services Report says Bray is in "good physical health," but he suffers from hypertension. The CDC says that individuals who are at higher risk for severe illness from COVID-19 include people aged 65 years or older, people who live in a nursing home or a long-term care facility, and people of any age who have serious underlying health conditions. *See* CDC, People Who Are At Higher Risk, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited May 10, 2020).

Although Bray does not fit into these categories, new studies identify an increased risk of death from the virus for individuals with hypertension. *See, e.g., Deborah J. Nelson, Blood-pressure drugs are in the crosshairs of COVID-19 research,* REUTERS (Apr. 23, 2020), *https://www.reuters.com/article/us-health-conoravirus-blood-pressure-ins/blood-pressure-drugs-are-in-the-crosshairs-of-covid-19-research-*

9

*idUSKCN2251GQ* (last visited May 13, 2020); Shiki Garg, Lindsay Kim, et al., *Hospitalization Rates and Characteristics of Patients Hospitalized with Laboratory-Confirmed Coronavirus Disease 2019 – COVID-NET, 14 States, March 1–30 2020*, Morbidity and Mortality Weekly Report, CDC (Apr. 8, 2020), https://www.cdc.gov/mm wr/volumes/69/wr/mm6915e3.htm.A. (last visited May 13, 2020). Because new information about potential co-morbidities is rapidly changing, the Court considers these studies indicating that hypertension may be an emerging risk factor for the virus.

The Court also acknowledges that, in certain circumstances, the threat of COVID-19 may constitute a compelling reason which warrants release of a defendant on bond. There is a greater risk of infection posed to the incarcerated because inmates and staff have a reduced ability to practice the social distancing and quarantine recommendations of the CDC. The CDC notes that many detention conditions create a heightened risk of danger to detainees, including insufficient quarantine space, highly congregational environments, and low capacity for patient volume. *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities,* Centers for Disease Control (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last visited May 10, 2020).

10

The Court takes into account that Bray suffers from a health condition that could place him at a much greater risk to contract COVID-19.

The Government says Bray has an active detainer for his parole violation. The parties and pretrial services jointly investigated the effect of the state detainer. They report that while MDOC would usually issue a detainer for alleged parole violations, there is currently no detainer for Bray; his violation would be handled by the State after the disposition of these felony charges because of the hardships posed by COVID-19.

The Court cannot disregard that Bray's alleged actions occurred while he was on parole. But, by offering a third-party custodian and expressing a willingness to be confined to his home, Bray presents a reasonable release plan. This will decrease the risk that Bray will endanger the community. Pretrial Services reports that the third-party– who attended the bond hearing – is a suitable custodian. She is a retired employee of the Michigan Health and Human Services with no criminal history or weapons in her home.

### V.    CONCLUSION

Bray presents sufficient evidence to rebut the presumption. After considering the presumption and the factors set forth in 18 U.S.C. § 3142(g), the Court concludes that Bray must be released pending trial. The Government did not prove by clear and convincing evidence that no condition

or combination of conditions will reasonably assure the safety of any other person and the community. Bray has no violence in his background, and no history of alcohol or substance abuse. He has community and family ties, and a third-party custodian with a stable residence. This persuades the Court to **GRANT** Bray's motion.

The Court will set conditions, including no contact with co-defendants and home confinement with a third-party custody, travel limited to within the Eastern District of Michigan, and that Bray self-quarantine for a period of 14 days following his release and observe the CDC's social distancing recommendations. These and other conditions attached to this Order will reasonably assure the safety of the community and Bray's appearance as required.

**IT IS ORDERED.**

Date: May 14, 2020                                    s/ Victoria A. Roberts
                                                      Victoria A. Roberts
                                                      United States District Judge